LAWRENCE MANUF'G CO. *v.* TENNESSEE MANUF'G CO.

(*Circuit Court, M. D. Tennessee.* July 1, 1887.)

TRADE-MARK—WHAT CONSTITUTES—COMMON USE.

A manufacturing company adopted and used the capital letters "LL" as a stamp or mark upon cotton sheetings of a certain class manufactured by it. The letters were used in connection with the words "Lawrence Mills," and also sometimes in connection with the figure of a rampant bull or a bull's head. The defendant manufactured cotton sheeting of a similar class upon which it stamped the words "Cumberland LL Sheeting—4–4." The said first-mentioned company thereupon filed its bill against the defendant, claiming a trade-mark in the said letters "LL," and praying for an injunction to restrain the use of them by defendant. The proofs showed that the letters "LL" were commonly known in the trade to indicate sheetings of a particular grade and class; that they had been used for some time by another manufacturer before the plaintiff made use of the same; and that they had also been used by several other manufacturers for a number of years without objection by the plaintiff. It further appeared that the plaintiff had stamped the same letters upon other goods of its manufacture inferior in grade to the sheetings to distinguish which they were claimed as a trade-mark *Held*, that the plaintiff was not entitled to the exclusive use of the letters, and the bill must therefore be dismissed.

In Chancery.
*J. H. Raymond* and *W. G. Rainey*, for complainant.
*Dickinson & Fraser* and *A. J. Hopkins*, for defendant.

JACKSON, J.   This suit is brought to restrain the defendant from using the capital letters "LL" upon brown sheetings manufactured and sold by it, on the ground that said letters constitute an essential feature or portion of complainant's trade-mark, by which it designates cotton sheetings of a particular quality of its own manufacture, which it is claimed the defendant infringes by using said letters upon sheeting of the same class or grade; and also to recover damages for said infringement.   The bill, after setting out several grades into which sheetings are generally classed according to weight,—one class including sheetings of such weight that 2.85 yards thereof weigh a pound; another, of such weight that 3 yards weigh a pound; and a third class, of such weight that 4 yards thereof weigh a pound,—with the differences which exist as to excellence, quality, and guaranties between rival manufacturers of such goods, etc.,—alleges that, prior to 1870, the complainant adopted, and thereupon became duly vested with the exclusive right to use, a label or trade-mark for all goods of its manufacture coming within said third class, to distinguish sheetings of its manufacture from sheetings of the same general class manufactured by others, the substantive and distinctive and chief feature of which label was and is an arbitrary sign or symbol, consisting of the capital letters "LL", prominently and separately appearing upon such label or stamp; and said trade-mark, with certain environments, which have been changed from time to time, has been so used by complainant since the said date of adoption, and, to-wit, for more than 15 years, and has been imprinted upon each and every piece or bolt of such sheetings of said third general class made and sold by complainant during said period; and, further, said trade-mark was so adopted by your orator for the purpose of distinguishing sheetings of its manufacture of said third general class from similar goods manufactured by others, and then known in the trade under distinctive trade-marks,—such, for instance, as the manufactures known as "Agawam F's" and "Atlantic P's".   In connection with said trade-mark or substantive element of said label, under and in connection with which the trade reputation of complainant has been established, as hereinafter alleged, complainant has used the words "Lawrence Mills," and the word "Sheetings," in different juxtapositions, and also at times a picture or representation of a "bull rampant,"—that is, of the whole body of a bull in a rampant position; and, in connection therewith, and underneath the same, and in a separated position, has always used said capital letters "LL," as and for the purpose aforesaid; that at great expense, and by years of endeavor, your orator has earned and acquired a trade reputation of great value as a manufacturer of said sheetings under its said trade-mark, with this result: that the sheetings of the said third general class of your orator's manufacture have come to be universally known as "LL sheetings," and sheetings so known, named, and called

for import the excellent raw material, the method and care of manufacture, and the general guaranty of excellence and lasting quality for which your orator has a long, valuable, and thoroughly established reputation as to all goods of its manufacture." It is further alleged that since complainant became vested, and while it continued to be vested with the exclusive right to the use of said trade-mark, the defendant herein has, since April, 1885, been manufacturing and selling large quantities of said sheeting of said third general class, upon which, and for the purpose of taking advantage of the complainant's trade label, trade-mark, and trade reputation, defendant has placed a stamp or label, in imitation of its stamp or label; such imitation by defendant consisting in stamping or printing on its said sheetings the capital letters "LL," separately and prominently from the other parts of its label; that said acts and doings of defendant tended to deceive the public, constituted a fraud upon the public, as well as upon complainant; and that the wrongful use of said letters by the defendant was for the purpose and with the tendency and effect of appropriating a part at least of the good-will and trade reputation of the complainant; against which relief was asked by injunction, and for an account of the damages thence resulting, etc.

The answer admits that in the trade of sheetings there are recognized classes, based upon the difference in weight of the goods per yard; that in one of such class 2.85 yards thereof weigh a pound; in another, 3 yards weigh a pound; in the third grade, 4 yards weigh a pound; and in the fourth, 5 yards weigh a pound; that the defendant has, since April, 1885, stamped upon its cotton goods weighing one-third of a pound to the yard the words "Cumberland LL Sheeting—4–4;" that the word "Cumberland," the name of the well-known river near which its works are located, was used to designate its manufacture and as a trade-mark; that the letters "LL" in connection with "Sheetings," were used to denote the class to which said sheetings belong, according to the usages of the trade, and the figures "4–4" to indicate that the goods are one yard wide. The answer then proceeds to controvert in detail the material allegations of the bill. It denies that complainant adopted said letters "LL" as its trade-mark, or as forming any substantive part of the same; and insists that said letters were designed and intended to designate and distinguish this grade of sheeting from other classes or grades made by it; that complainant's trade-mark, if it has any, consists in the bull's head and words "Lawrence Mills," stamped upon its goods; that "LL" has always in the trade been understood to indicate grade, class, or quality, and not origin or ownership; that, at the time complainant commenced the use of these letters, and for many years prior thereto, they had acquired in the trade the general and fixed meaning of four-yard sheeting, and that it indicated, without respect to ownership, that the goods on which they were stamped were of a general class or grade known to the trade as four-yard sheeting; that a number of mills besides complainant had used said letters for many years to indicate this grade, using them in connection with their several names or trade-marks, but

not as trade-marks; that complainant was not the first to employ or appropriate these letters as a label or brand upon goods of this general class; that in fact the Atlantic Mills, another cotton manufacturing company, had used these letters on sheeting of the same grade and character before complainant did; and that said letters were generally known in the trade in connection with brown cotton sheetings before complainant commenced stamping them on its goods. It is further averred that besides its "Lawrence Mills Sheeting," labeled "LL," the complainant is now, and has been since it commenced the use of said letters, manufacturing other sheetings of the same weight and class, but of an inferior or different quality, which it brands as "Shawmut," with the addition of said capital letters "LL," impressed upon them in the same way as upon those branded "Lawrence Mills." The defendant denies that in using said letters upon its four-yard sheeting there was any intention to simulate the label of complainant, or to impose its goods upon the public as the goods of complainant, and that no purchaser of ordinary caution and ordinary intelligence has ever been or will be deceived, by any similarity in the two labels, into mistaking the defendant's goods for those of the complainant, etc.

Upon the issues thus presented by the pleadings, the parties have examined a large number of witnesses, engaged in or connected with the trade in cotton sheetings, in various cities and sections of the country. This evidence is too voluminous to be recited in full or commented on in detail. It has been carefully examined by the court, and the general conclusions of fact established by or deducible from it, so far as material to the proper determination of the questions involved, will be briefly stated.

It appears that, prior to 1867, the complainant employed as its brand on third class, or four-yard sheeting, manufactured and sold by it, the picture of a bull in a rampant position, in connection with the words, " Lawrence Mills [the name by which the Lawrence Manufacturing Company was commonly known] Sheeting," and beneath these was the single capital letter "L." In January or February, 1867, the complainant made the addition of another capital "L" to its said label or device, forming the double "L," which it has since continuously used on said goods. The *reason* for this change, and the *circumstances* under which it was made, are stated by Charles S. Smith, general selling agent of complainant from 1865 to 1866, as follows: "We were induced to change [from ' L' to' LL,'] because it was a time when cotton goods were depreciating. We had made considerable sales of the single 'L,' but a party who had bought a large lot was underselling us at a price lower than we could afford to meet, and I suggested that, *in order to keep them out of this competition*, the mills should change the fold of the single ' L' from a narrow to a wide fold, and to put on a double 'LL'." This was accordingly done. When this change was made, by placing the double "LL" on its four-yard goods, the complainant was a well-known maunfacturing company, having manufactured and sold large quantities of said third-class sheetings. In place of the "bull rampant," the complainant,

in 1883, substituted the "bull-head," so that its full brand in all four-yard sheeting of *first quality* is now the "bull's head," in connection with the words "Lawrence Mills Sheeting," and underneath these the letters "LL."

Contemporaneous with its employment, as aforesaid, of the capital letters "LL" on its *third-class* goods of first quality, the complainant put into the trade a brown cotton sheeting, of the same weight as that stamped with the bull rampant, the words "Lawrence Mills" and "LL," which it branded "Shawmut LL Sheeting," and which, on account of imperfections and defects, was and is *inferior* to and of less value than the former. These "Shawmut LL Sheetings" have been put on the market by complainant continuously since 1867. It is shown that complainant makes two other kinds of brown sheetings, graded according to weight, and stamps one "XX," and the other "XXX," to indicate or denote the distinction in grade. Through its authorized selling agents, the complainant has for many years advertised its sheetings in Sheldon's Pamphlets, a well-known dry goods advertising periodical, heading its advertisement with the picture of a bull's head, (or bull rampant,) the words, "Lawrence Mills," and then following are the letters "XX," "XXX," "LL." The complainant makes other goods besides sheetings, called "flannels," "denims," on which it uses the picture of a *bull's head*, and the words "Lawrence Mills" similar to that used on the four-yard sheetings, but not the letters "LL." It is shown by the proof that letters of the alphabet are, and for many years have been, used by manufacturers to designate the different grades, classes, and qualities of goods made by them; that almost the entire alphabet is used in this way,—some mills employing a great many different letters,—so that it is understood generally in the cotton goods trade that letters are thus used to designate grade, class, or quality. It is also understood generally in the trade that "LL", as stamped on the complainant's sheeting, means four-yard goods, or goods of the third class or grade; and that the words "Lawrence Mills," in connection with the *bull's head*, are used or employed to designate or indicate the maker or manufacturer. These goods are always invoiced by complainant to its selling agents and to the trade as "Lawrence" or "Lawrence Mills" "LL," and they are thus generally known in the trade, and are so spoken of and distinguished, except in some instances. Persons who have been more familiar with them, or have handled them exclusively, call them simply "LL's," thereby meaning the sheeting made by the Lawrence Company. But, *generally*, the complainant's said sheetings are known and described as "Lawrence LL", or "Lawrence Mills LL;" just as other brands of sheeting stamped with "LL" are generally known in the trade and spoken of as "Beaver Dam LL," "Badger State LL," "Aurora LL," "Cumberland LL," etc.

The signification of the letters "LL," stamped upon cotton sheetings as indicative of grade, class, and quality, was generally understood in the trade when defendant commenced the use of said letters in 1885. The fact is clearly established that the Atlantic Mills, of Lawrence, Massachusetts, stamped "LL" upon brown cotton sheeting of its manufacture

in the years 1860, 1862, 1864, and 1865, and from 1872 down to the present time. There were cessations (or "interregnums," as the witness J. C. Bowker calls it) in the manufacture of said goods by the Atlantic Mills from time to time between 1860 and 1865, and between 1865 and 1872, none being thus stamped between the latter dates. The weight of the Atlantic goods, made in 1860, and stamped with the letters "LL," was 4.19 yards to the pound. In 1862 the goods so stamped weighed 4.36 yards to the pound; and in 1863 and 1864–65 their weight was 4.56 yards to the pound. In 1872, when the Atlantic Mills again commenced placing the "LL" on its sheetings, they weighed and have since continued to weigh five yards to the pound. It further appears that said Atlantic Mills, in 1860, made a grade of brown sheeting which weighed 3.89 yards to the pound, and which it stamped with a single "L." The Atlantic Mills employed said letters to distinguish different grades of goods, and has continued to use letters for that purpose. It is fairly deducible from the evidence that the Atlantic "LL" cotton sheetings were in the market in 1867, when complainant first commenced using said letters on its third-class sheetings. Said Atlantic goods are and were of the same, general character and class as those upon which complainant stamps "LL." It is shown that the Atlantic goods manufactured since 1872, and stamped with said letters, are so near alike in appearance to the Lawrence "LL" sheeting that ordinary buyers, and even experts, cannot, by looking at them, distinguish them from each other. On both of them the letters "LL" are solid block blue letters of nearly the same size. It appears that the Atlantic "LL" and the Lawrence "LL" sheetings are both used for the same general purpose, such as shirting, underwear, etc., and that, while they are readily distinguishable from each other by brokers and jobbers, they *compete* with each other, with retail dealers, and the purchasers for consumption.

Representative merchants, wholesale and retail, in several large cities;— Chicago, St. Louis, Indianapolis, Nashville, New York, Boston,—state that the Atlantic "LL" sheetings were known in the trade before the Lawrence "LL's," or any other "LL" goods. It is shown that neither an expert, nor an ordinary purchaser, can tell, by mere inspection, whether a sheeting will run four, four and a half, or five yards to the pound; that, by looking *only* at the letters "LL," etc., the Lawrence "LL" and the Atlantic "LL" sheeting might be readily mistaken, the one for the other. The complainant's witness Lurie, of Chicago, with both sheetings *folded* so as to expose only the double "LL," could not tell one from the other. It is further shown that, looking only at the letters "LL," purchasers would as readily mistake the inferior Shawmut "LL" sheeting of complainant for its "first" or regular Lawrence "LL" sheeting as they would the defendant's Cumberland "LL" goods.

It appears that John V. Farwell & Co., of Chicago, have for the past six or seven years been using a private brand for sheeting they sold, known in the trade as "*Albany* LL;" that in 1864, with full knowledge of this fact, the complainant stamped, for said Farwell & Co., 150 bales of its four-yard sheetings with the label " Albany LL," the stamp being

furnished by Farwell & Co., and returned to them with the goods, which were sold in the market as John V. Farwell & Co.'s "Albany LL" sheeting. The evidence shows that complainant has all the while known of the Atlantic Mills using the "LL" on its goods; that, for more than six years before the commencement of this suit, it has been aware of the fact that numerous other manufacturers were stamping said letters on their four-yard cotton sheeting; and that it never objected until about the time of bringing this suit and one of like character against the Aurora Cotton Mills at Chicago. It is not shown that the brand of defendant has ever been mistaken for that of complainant. There is no direct evidence that complainant, when it commenced using the "LL" letters on its third-class goods, adopted them for the purpose of making them its trade-mark, or any substantial or material part thereof. It does not appear that the single "L" used prior to 1867, constituted, in whole or in part, its trade-mark. The Atlantic Mills were using the single "L" on one grade or class of its goods merely to indicate quality, from 1862 to 1868.

Under these facts and circumstances the question is presented whether the complainant can successfully claim the exclusive right to use the capital letters "LL" on third-class cotton sheeting running four yards to the pound. In other words, has it established in and to said letters, for four-yard sheeting, a valid trade-mark, which has been defined to be the name, symbol, figure, letter, form, or device adopted and used by a manufacturer or merchant, in order to designate the goods that he manufactures or sells, and to distinguish them from those manufactured or sold by others to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry, workmanship, or enterprise?

It is not deemed necessary, in the view we take of the facts, and the law applicable to the same, to enter upon any extended review of the authorities on trade-mark law, or to consider the general abstract proposition whether letters and numerals can, in and of themselves, be the subject of appropriation so as to constitute a valid trade-mark, or form an essential and material element thereof,—a point discussed at the hearing by learned counsel for the complainant. It may be conceded that letters of the alphabet and figures are, in some forms and combinations, capable of such appropriation under the authority of *Boardman* v. *Meriden*, 35 Conn. 402; *Gillott* v. *Esterbrook*, 48 N. Y. 374; *Lawrence Co.* v. *Lowell Mills*, 129 Mass. 325; *Shaw Stocking Co.* v. *Mack*, 12 Fed. Rep. 707; *Kinahan* v. *Bolton*, 15 Ir. Ch. 75. In this last case the letters "LL" were sustained as a valid brand for a certain article of whisky.

Still the vital question remains, do the capital letters "LL" in the present case constitute a substantial, material, or essential element in complainant's trade-mark, so as to give the Lawrence Company the exclusive right to use the same on cotton sheeting of the third class, weighing four yards to the pound? The general principles of law, which, under the facts and circumstances above stated, must control the determination of that question, are well settled by the decisions of the supreme

court in the following trade-mark cases: *Canal Co.* v. *Clark*, 13 Wall. 311; *McLean* v. *Fleming*, 96 U. S. 245; and *Manufacturing Co.* v. *Trainer*, 101 U. S. 51.

These cases recognize the following propositions, well settled in the law of trade-marks: (1) That, in order to entitle a person to the exclusive use of a mark, device, or symbol, as a trade-mark, it must appear that the purpose at the time of adoption was to identify the maker or manufacturer with the vendible article to which it is attached; that is, such symbol or mark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. In other words, to constitute a valid trade-mark, it must appear that the mark or symbol was originally designed, as its primary object and purpose, to indicate the producer of the commodity, and to distinguish it from like articles manufactured by others. (2) That, if it appear that the device, mark, or symbol was adopted and placed upon the article for the purpose of indicating its class, grade, style, or quality, or for any such purpose, other than a reference to or indication of its origin or ownership, it cannot be upheld as a trade-mark. This is but a necessary corollary of the first proposition. (3) That this exclusive right to the use of the mark or device, constituting a trade-mark, being founded on priority of appropriation, if it appear that the claimant was not the first to use or employ the mark on the same or like articles of production, he will not present such title to or right in the design as will entitle him to protection.

If, under the application of these rules to the facts of the case under consideration, it can be held that complainant has established the existence of a trade-mark in the letters "LL," or that said letters form a substantive, distinctive, and chief feature of its trade-mark, then the equitable jurisdiction of this court may be called into exercise in its behalf, if it further appear (1) that the defendant has imitated or pirated said mark; (2) that this imitation amounts to a false representation, express or implied, designed or accidental, which enables the imitator to sell his goods as those of the complainant; and (3) that such imitation is made without license or acquiescence of complainant.

Now, what was the object and design of the complainant in adopting and stamping the letters "LL" on its four-yard sheetings? Was it to indicate the origin of such sheetings,—to identify them with complainant's ownership or manufacture, and distinguish the same from those of a similar class and character manufactured by others,—or was it done as descriptive of the goods, or to indicate their grade, class, or quality, style, or weight? There can be little or no doubt as to the correct answer that must, under the proof, be given to these essential questions of fact on which the rights of the parties hereto depend. It is perfectly clear from the account which complainant's agent, Smith, gives of the change from the single "L" to the double "LL," made in 1867, that the purpose and design in adopting the latter was not to indicate origin or ownership, or to distinguish the sheetings on which said letters were stamped from similar goods manufactured by others, but that its *primary*

*object* was to denote its class, quality, or grade, and to represent it to the public as being *different goods* in class and quality from those *primarily* sold by complainant under the single "L" stamp. The double "LL" was adopted *"because it was a time when cotton goods were depreciating. We* [the Lawrence Company] *had made considerable sales of the single 'L,' but a party who had bought a large lot was underselling us, at a lower price than we could afford to meet, and I suggested that, in order to keep them* [four-yard sheetings thereafter to be made and sold] *out of this competition that the mills should change the fold of the single 'L' from a narrow to a wide fold, and to put on a double 'LL.'"* It is here clearly shown that the avowed object and purpose of the change from the single to the double "LL" was not the adoption of another trade-mark, or a new and substantive addition to its existing trade-mark; but the intention was simply to keep the sheetings *thereafter to be sold out of competition with precisely the same goods previously* sold and *then* on the market. The change to the double "LL" was not made to distinguish complainant's four-yard sheeting from similar goods *manufactured by others,* but to prevent identification with its own goods of the same grade, class, and quality previously sold, and which the purchaser was using in competition with it. The double "LL" was manifestly intended to *convey* to the *public* the impression that the goods on which they were stamped differed from, or were superior to, those already sold. How else were they to be kept out of competition with those already in the market, and which were underselling the complainant? How was that competition to be avoided by such a change, except by inducing the belief on the part of the *future buyers* that the goods on which "LL" was stamped were different from or superior to those of the same quality sold under the single "L" stamp? It may well be doubted whether the claimant of a symbol or mark having its origin in such purpose can successfully invoke the aid of a court of equity in its protection. It is well settled by many authorities that a *lack of truth* debars a trade-mark from protection; that the tale told by the symbol must be sincere; and that the instant it ceases to be truthful, *in spirit as well as letter,* it becomes an instrument of fraud, and is not lawful.

In *Ford* v. *Foster,* L. R. 7 Ch. 611, it was said:

"According to the rule *ex turpi causa non oritur actio,* if a trade-mark contain a false representation,—a representation calculated to mislead the public,—a man cannot by using that which is itself a *fraud* obtain an exclusive right, or indeed any right at all."

In *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218, 2 Sup. Ct. Rep. 436, it was held that, as the object of a trade-mark was to indicate the origin of manufactured goods, a person who affixes to goods of his own manufacture a trade-mark which declares that they are goods of the manufacture of some other person thereby commits a fraud on the public which no court of equity will countenance. The same wholesome principle would seem to apply to the case of a party who, having sold large quantities of goods of his own manufacture under one brand, and thereafter, while such goods were still in the market, changes his brand

on precisely similar goods in all respects, for the avowed purpose of relieving them from the competition of those already sold; the object to be accomplished being only attainable by a misleading representation to the public, to the effect that the goods with the new stamp are different from those previously made and sold, and that they are also superior, as indicated by the employment of the double letters, which, according to the well known usages of the trade, signify progression in grade and quality.

But, whether complainant is debarred from relief on the ground that its change to and employment of the double "LL" was designed to mislead the public into believing that the sheetings with that stamp were different in grade and quality from those already sold, it is, however, very clear that those letters were not adopted with any purpose of *identification of manufacture*, or to *indicate origin or ownership*, but were intended as a new descriptive mark or symbol, to designate the class, grade, or quality of the sheetings on which it is stamped. The history of its adoption, taken in connection with the fact that the complainant then had in the "bull rampant," with the words "Lawrence Mills Sheeting," a distinct, substantive trade-mark, indicating origin, and identifying its goods, leave no room to doubt that the device or symbol "LL" was intended to represent the first quality of third-class sheeting, and not its origin, manufacture, or ownership.

The case, in all its material facts, is not near so strong in favor of the complainant's claim as existed in *Manufacturing Co.* v. *Trainer*, 101 U. S. 52, 53. There it appeared that the Amoskeag Manufacturing Company, engaged in the manufacture of ticking, which, prior to 1834, was marked with a label consisting of a certain device, within which was printed the name of the company in red colors, its place of manufacture, the words "Power Loom," and in the center the single letter "A" or "B" or "C" or "D," according to the grade of excellence of the goods. In 1834 the company made *an improvement in its manufacture*, by which it produced a grade or quality of ticking superior to any which it had previously manufactured. For goods of this quality it used in its label, in place of the single letter "A," the three letters "ACA." The original device, with its colored border and printed words, indicating the company by which and the place where the goods were manufactured, was retained. The question was whether the said letters "ACA" constituted a valid trademark. The rest of the device was only a label, and the claim to the trade-mark rested alone upon said letters "ACA," adopted contemporaneously with the improvement made by the company in the grade or quality of its ticking. It was there contended for the complainant "that the combination was adopted and used, not merely to indicate the quality of the goods, but also their origin as of the manufacture of the Amoskeag Company." On the part of the defendant the contention was "that the letters were designed and are used to indicate the quality of the goods manufactured, and not their origin." After a review of the general principles of law as to trade-marks, the court said: "It is clear from the history of the adoption of the letters 'ACA,' as narrated by complainant,

and the device within which they are used, that they were only designed to represent the highest quality of ticking which is manufactured by the complainant, and not its origin. The device previously used, and subsequently, stated the name of the manufacturer, and no purpose could have been subserved by any further declaration of that fact; and, besides, the letters themselves do not suggest anything, and require explanation before any meaning can be attached to them. That explanation, when made, is that they are placed in the device of the company when it is affixed to the finest quality of its goods, while the single letters are used in the same device when it is attached to goods of an inferior quality. They are never used by themselves, but merely as part of a device, containing, in addition to the border in red, several printed terms. Alone the letters convey no meaning. They are only significant as part of the general device constituting the trade-mark. Used in that device to denote only quality, and so understood, they can be used by others for a similar purpose equally with the words 'Superior' or 'Superfine,' or other words or letters, or figures having a like signification." This language applies in all its force to the case under consideration. Here the device above the letters "LL" contains, not only the complainant's name, "Lawrence Mills," but the name of the goods, "Sheetings," and the picture of the "bull rampant" or the "bull's head," which constituted a trade-mark, as distinguished from a label giving all the information required as to the ownership or origin of the goods, while the letters "LL" alone indicate the quality of the sheetings.

If the letters do not perform that function, then complainant, contrary to the well-established custom of the trade, and of all manufacturers of cotton goods, has its first quality of third-class sheetings on the market without any mark, symbol, or sign to inform the public of their quality. When asked for an explanation of the letters "LL," which in and of themselves convey no meaning, we are told that they were adopted to distinguish its *later production* from sheetings of the same character, class, grade, and quality which the complainant had previously sold in large quantities, and to keep them out of competition with such goods in the hands of purchasers from complainant. Said letters were intended not only to indicate the quality of the sheetings on which they were stamped, but also to represent an *admitted untruth*, that they were different goods from those previously sold. They cannot, under the authorities, constitute a valid trade-mark, such as will give complainant the exclusive right to use the same on third-class sheeting, weighing one-fourth of a pound to the yard.

It is insisted on behalf of complainant that the letters "LL" indicate, not *merely* the grade, class, or quality of its sheeting, but also represent its origin, manufacture, or ownership. Whether letters by themselves, or in combination, can be employed to represent both the grade or quality of the goods and their origin, thus performing, at the same time, the double office of trade-mark and description, or classification of the article to which they are affixed, is a question not discussed in either of the supreme court decisions above referred to. This theory that the letters

"LL" signify or possess the dual meaning contended for is unsupported in point of fact by the evidence.  But, suppose it actually existed, it may be well doubted whether such double signification could stand under the law of trade-marks, so as to confer an exclusive right to the use of such a symbol.  In case of such double meaning, if the two purposes could co-exist in one and the same trade-mark, which is to control?  Does the law allow to parties the privilege of thus blending public and private rights?  It was conceded by counsel for complainant at the hearing (what was otherwise thoroughly established) that the letters "LL" on cotton sheetings did indicate four-yard or third-class goods, but it was said that they had the further object, and performed the additional purpose, of designating their ownership or origin.  Suppose the meaning thus assigned to said letters should be expressed in words, it would stand as follows:  "'LL,' meaning thereby third-class cotton sheeting as known in the trade, weighing four yards to the pound, 36 inches wide, 52 yards to the bolt, 56 by 60 threads to the square inch, first-quality of said grade, and manufactured by the Lawrence Manufacturing Company of Lowell, Massachusetts."  This would express fully the two distinct meanings claimed for the device.  One would confer on the company the exclusive right to its use, while the other would be open to the public.  Now, would the fact that one branch of such meaning referred to origin or ownership preclude the public from using the letters in their other meaning, as indicating or describing third-class sheeting?  This would be a strange anomaly in the law, and would lead to inextricable confusion.  Where origin and ownership is otherwise indicated, as by the use of the manufacturer's name, then the symbol, mark, or device which is intended to designate grade, class, or quality cannot properly be also employed to denote origin or manufacture, and thus confer exclusive right to its use.

In *Caswell* v. *Davis*, 58 N. Y. 223, it is said that "words or phrases in common use, and which indicate the character, kind, quality, and composition of an article of manufacture, cannot be appropriated by the manufacturer exclusively to his own use as a trade-mark; and this is so although the form of words or phrases adopted also indicate the origin and maker of the article, and were adopted by the manufacturer simply for that purpose.  The combination of words must express only the latter to authorize its protection as a trade-mark.  A single symbol or mark cannot at the same time perform two such different offices, especially where origin and ownership is fully indicated or disclosed by other portions of the label or device.  It being settled that a name, symbol, or mark, which is indicative of grade or quality, may be employed by any and all persons engaged in the manufacture of the same class or character of goods, it follows that, necessarily, a trade-mark cannot also serve that distinctive purpose.

In *Canal Co.* v. *Clark*, 13 Wall. 311, the supreme court say:

"To entitle a name or mark to equitable protection as a trade-mark, the right to its use must be exclusive, and not one which others may employ with as much truth as those who use it; and this is so although the use by a sec-

ond producer, in truthfully describing his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product. Purchasers, though mistaken, are not in such case deceived by false representations, and equity will not enjoin against telling the truth."

But we need not dwell upon this question, as its correct solution is not essential to the proper determination of the present case; since, as already shown, the letters "LL," as used on complainant's first quality of cotton sheetings, in connection with the words "Lawrence Mills," and the device of the bull's head, indicate only grade, class, and quality, and not origin, ownership, or manufacture; and under this conclusion of fact the cases of *Amoskeag Manuf'g Co.* v. *Trainer*, 101 U. S. 51, and *Amoskeag Manuf'g Co.* v. *Spear*, 2 Sandf. 599, are decisive of this suit. In its material facts, and in the legal principles applicable to the same, this case cannot be distinguished from that decided in 101 U. S.

The other defenses relied on, and which will be only briefly noticed, are also conclusive against the right of the complainant to the relief sought by its bill. When the complainant adopted the letters "LL," it is established beyond all controversy that said letters had been previously and were then employed by the Atlantic Mills or Company of Lawrence, Massachusetts, to designate the same or like articles of sheeting. The brown sheeting which the Atlantic Mills produced at intervals between 1860 and 1872, and on which it stamped "LL" to indicate their grade, quality, and weight, ranged in weight from 4.19 to 4.56 yards to the pound. These goods were well known in the trade, and portions of them were on the market in 1867. The goods being substantially of the same class and character as the sheeting on which complainant subsequently stamped "LL," as already shown, and it being well understood in the trade that said letters indicated grade and quality, the complainant could not, under the authorities, make an appropriation of them so as to acquire the exclusive right to their use. · Priority of use by the Atlantic Mills of said letters, either as a trade-mark, or as an indication of the character of the goods, would preclude the subsequent employment and adoption of them by complainant as a symbol to designate the origin of its goods or as a valid trade-mark. This is clearly settled by the authorities. After an interval or "interregnum" of non-production between 1865 and 1872, the Atlantic Mills resumed the stamping of its cotton sheeting with the "LL," and has continuously used said letters since that time on goods which are substantially the same as complainant's, differing slightly in weight, but competing with them by purchasers for consumption. Under such circumstances, could complainant enjoin the Atlantic Company from using said letters on its cotton sheetings? It certainly could not without establishing beyond all controversy that the interruption or "interregnum" by the Atlantic Mills in the production of its "LL" sheeting operated as an abandonment of its right to use said letters. This is asserted by counsel for complainant; but the proposition is unsupported in fact and law. The evidence establishes no abandonment of said letters by the Atlantic Mills. What is

required to show abandonment in such cases is clearly laid down by Brown on Trade-Marks, §§ 680–682.

"A manufacturer or merchant may discontinue the stamping or branding his products for many years before discontinuing the sale of the goods marked by him, and may destroy the dies, brands, or stencil plates: for he may have laid up a large stock of his wares or products, or he may have launched them upon the ocean of commerce." "Mere lapse of time does not, *per se*, warrant the conclusion of abandonment."

But suppose the Atlantic Company's private right, if it ever had or claimed any in the letters "LL," had been abandoned in 1867, said letters having already become well known in the trade, and generally understood to designate grade and quality of sheetings, how could complainant appropriate them to its exclusive use as a trade-mark? It is suggested that, by complainant's long use of the letters, and a superior quality of its goods, the mark has ripened into an exclusive right, because many dealers now associate said letters with the products of the Lawrence Manufacturing Company. This is plausible, but not sound. Such after-acquired reputation or association, where the primary import or design of the symbol or mark is expressive of grade or quality, will not constitute a trade-mark, or establish an exclusive right to the use of such mark. Thus in Upton on Trade Marks, 137, it is said "that, although by long-continued use of certain words, letters, marks, or symbols, which do not of themselves, and were not designed to, indicate the origin and ownership of the goods to which they were affixed, the goods so marked, and because so marked, have become known as those of the manufacturer who first used them, such fact cannot alter the original meaning of the words or symbols, or the intent with which they were first used as denoting the name of the thing, or its general or relative quality, or take from others the right to employ them in the same sense." This principle is clearly sustained in *Amoskeag Manuf'g Co.* v. *Spear*, 2 Sandf. 599; *Canal Co.* v. *Clark*, 13 Wall. 311; and *Amoskeag Manuf'g Co.* v. *Trainer*, 101 U. S. 52.

Shortly after the Atlantic Company resumed the use of "LL" upon its cotton sheeting, in 1872, other mills, in various portions of the country, commenced using said letters to indicate grade, quality, and class of their four-yard sheetings, and have continuously since used the same for the same purpose; the name of the producer or some other symbol being used along with them to indicate the origin or ownership of the goods. But it is said that the product of the Atlantic Mills before 1867 was so fortuitous or intermittent, and so insignificant, as compared with complainant's since that date, that the former's use of said letters should not preclude the complainant's right to the same. Except during the year 1860 it is not shown what was the extent of the Atlantic Company's production of "LL" sheeting. But the right to the use of said letters as a trade-mark does not depend upon, nor is it to be tested by, the relative output of said mills, or of the Lawrence Mills, with those who have subsequently stamped said letters on their cotton sheetings. Our conclusion is that the Atlantic Company's use of said letters before their

adoption by complainant precluded the latter from acquiring a valid trade-mark therein.

Again, it is proved that complainant has not only branded sheetings of the same grade and value as its Lawrence "LL" with the private brand of certain jobbers containing the letters "LL," but has also, since about 1867, put upon the market an inferior quality of cotton sheeting weighing four yards to the pound, which it brands "Shawmut LL." If the presence of "LL" on the "Cumberland" cotton sheetings either actually deceives, or is calculated to deceive, the public or buyers of such goods, by inducing the belief that the goods are those of the Lawrence Company's first quality, whereby that company is injured in its trade, what is to be said of precisely the same symbol, "LL," placed by the Lawrence Company upon its own sheeting of an inferior quality and less value? If goods so stamped convey a guaranty of uniformity and excellence, and by means of which complainant's first quality of third-class sheeting has met with public favor, upon what ground can complainant justify the use of said letters upon an inferior and less valuable article, that does not equally warrant their use by the defendant, or exonerate it from the charge of deceiving the public? "An exclusive privilege for deceiving the public is, assuredly, not one that a court of equity can be required to aid or sanction. To do so would be to forfeit its name and character." . *Medicine Co.* v. *Wood*, 108 U. S. 218, 2 Sup. Ct. Rep. 436. An ingenious effort is made to relieve complainant from the effects of its own act in discrediting its alleged trade-mark, but when it claims that the meaning of "Shawmut" explains the matter it necessarily concedes that "Cumberland," the name adopted by the other mills, may do the same.

There is, of course, no infringement by the defendant if there is no valid trade-mark in the letters "LL." It was, however, urged in argument that, in the absence of a legal trade-mark to be protected, still the complainant was entitled to relief on the ground that its label, or a distinctive part thereof, was being similated by defendant so as to impose its goods upon the public as those of complainant; that defendant's use of said letters amounted to unfair competition in trade; and that the public was thereby imposed on, and the complainant defrauded out of its just and reasonable profits. It is well settled that a party may, under certain circumstances, be restrained from using another's label, which do not rise to the rank of trade-marks. No one has a right to represent his goods as the goods manufactured by another. To do this by using another's labels is actionable. But the facts of this case warrant no such finding against the defendant, who has been guilty of no fraudulent intent, and has in no way either deceived the public or defrauded the complainant.

Upon the whole case the court is clearly of the opinion that complainant has no legal trade-mark in the letters "LL," that it is not entitled to the relief sought by its bill, and that its said bill should be dismissed with costs. It is accordingly so ordered and decreed.