Mr. Justice STRONG
 

 delivered the opinion of the court.
 

 The first and leading question presented by this case is whether the complainants have an exclusive light to the use of the words “ Lackawanna coal,” as a distinctive name
 
 *321
 
 or trade-mark for the coal mined by them and transported over their railroad and canal to market.
 

 The averments of the bill
 
 *
 
 are supported by no inconsiderable evidence. The complainants were undoubtedly, if not the first, among the first producers of coal from the Lackawanna Valley, and the coal sent to market by them has been generally known, and designated as Lackawanna coal. "Whether the name “ Lackawanna coal ” was devised or adopted by them as a trade-mark before it came into common use is not so clearly established. On the contrary the evidence shows that long before the complainants commenced their operations, and long before they had any existence as a corporation, the region of country in which their mines were situated was called “ The Lackawanna Valley;” that it is a region of large dimensions, extending along the Lackawanna River to its junction with the Susquehanna, embracing within its limits great bodies of coal lands, upon a portion of which are the mines of the complainants, and upon other portions of which are the mines of The Pennsylvania Coal Company, those of The Delaware, Lackawanna, and Western Railroad Company, and those of other smaller operators. The word “ Lackawanna,” then, was not devised by the complainants. They found it a settled and known appellative of the district in which their coal deposits and those of others were situated. At the time when they began to use it, it was a recognized description of the region, and of course of the earths and minerals in the region.
 

 The bill alleges, however, not only that the complainants devised, adopted, and appropriated the word, as a name or trade-mark for their coal, but that it had never before been used, or applied in combination with the word “coal,” as a name or trade-mark for any kind of coal, and it is the combination of the word Lackawanna with the word coal that constitutes the trade-mark to the exclusive use of which they assert a right.
 

 
 *322
 
 It may be observed there is no averment that the other coal of the Lackawanna Valley differs at all in character or quality from that mined on the complainants’ lands. On the contrary, the bill alleges that it cannot easily be distinguished therefrom by inspection. The bill is therefore an attempt to secure to the complainants the exclusive use of the name “Lackawanna coal,” as applied, not to any manufacture of theirs, but to that portion of the coal of the Lackawanna Valley which they mine and send to market, differing neither in nature or quality from all other coal of the same region.
 

 Undoubtedly words or devices may be adopted as trademarks which are not original inventions of him who adopts them, and courts of equity will protect him against any fraudulent appropriation or imitation of them by others. Property in a trade-mark, or rather in the use of a trademark or name, has very little analogy to that which exists in copyrights, or in patents for inventions. Words in common use, with some exceptions, may be adopted, if, at the time of their adoption, they were not employed to designate the same, or like articles of production. The office of a trade-mark is to point out distinctively the origin, or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. This may, in many cases, be done by a name, a mark, or a device well known, but not previously applied to the same article.
 

 But though it is not necessary that the word adopted as a trade-name should be a new creation, never before known or used, there are some limits to the right of selection. This will be manifest when it is considered that in all cases where rights to the exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another; and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all
 
 *323
 
 tbe authorities.
 
 *
 
 Hence the trade-mark must either by itself, or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived. The first appropriator of a name or device pointing to his ownership, or which, by being associated with articles of trade, has acquired an understood reference to the originator, or manufacturer of the articles, is injured whenever another adopts the same name or device for similar articles, because such adoption is in effect representing falsely that the productions of the latter are those of the former. Thus the custom and advantages to which the enterprise and skill of the first appropriator had given him a just right are abstracted for another’s use, and this is done by deceiving the public, by inducing the public to purchase the goods and manufactures of one person supposing them to be those of another. The trademark must therefore be distinctive in its original signification, pointing to the origin of the article, or it must have become such by association. And there are two rules which are not to be overlooked. No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection. As we said in the well-considered case of
 
 The Amoskeag Manufacturing Company
 
 Spear,
 
 †
 
 “ the owner of an original trade-mark has an undoubted right to be protected in the
 
 *324
 
 exclusive use of all the marks, forms, or symbols, that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures, or symbols, which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or a symbol, which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose.”
 
 *
 

 And it is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies. Could such phrases, as “Pennsylvania wheat,” “Kentucky hemp,” “Virginia tobacco,” or “ Sea Island cotton,” be protected as trademarks ; could any one prevent all others from using them, or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many. It can be permitted only when the reasons that lie at the foundation of the protection given to trade-marks are entirely overlooked. It cannot be said that there is any attempt to deceive the public when one sells as Kentucky hemp, or as Lehigh coal, that which in truth is such, or that there is any attempt to appropriate the enter
 
 *325
 
 prise or business reputation of another who may have previously sold his goods with the same description. It is not selling one man’s goods as and for those of another. Nothing is more common than that a manufacturer sends his products to market, designating them by the name of the place where they were made. But we think no case can be found in which other producers of similar products in the same place, have been restrained from the use of the same name in describing their goods. It is true that in the case of
 
 Brooklyn White Lead Company
 
 v. Masury,
 
 *
 
 where it appeared that the defendant (at first selling his product under the name “Brooklyn white lead”), had added to the name the word “ Company” or “ Co.,” which made it an imitation of the plaintiff’s trade-mark, though he was not a company, he was enjoined against the use of the added word. It was a case of fraud. He had assumed a false name in imitation of a prior true one, and with the obvious design of leading the public to think his manufacture was that of the plaintiff But the court said, as both the plaintiff and defendant dealt in the same article, and both manufactured it at Brooklyn, each had the same right to describe it as Brooklyn white lead.
 

 We have been referred by the plaintiffs to three decisions which are supposed to justify the adoption of the name simply of a district or town, as a trade-mark.
 

 One of these is
 
 Alvord
 
 v.
 
 Newman.
 
 There it appeared that the complainants had been manufacturers of cement or water-lime at Akron, from beds in the neighborhood of that place, for about thirteen years, and that they had always designated and sold their products as “Akron cement,” and “Akron water-lime.” The defendants commenced a similar business twelve years later, and manufactured cement from quarries situated near Syracuse, in Onondaga County, and called their product “Onondaga
 
 Akron
 
 cement, or waterline,” It was not in fact Akron cement (for Akron and Syracuse were a long distance from each other), and the
 
 *326
 
 purpose of calling it such was evidently to induce the public to believe that it was the article made by the plaintiffs. The act of the defendants was therefore an attempted fraud, and they were restrained from applying the word Akron to their manufacture. But the case does not rule that any other manufacturer at Akron might not have called his product “Akron cement,” or “ Akron water-lime.” On the contrary, it substantially concedes that the plaintiffs by their prior appropriation of the name of the town in connection with the words cement and lime acquired no exclusive right to its use, as against any one who could use it with truth.
 

 McAndrews
 
 v.
 
 Bassett
 
 is another case cited by the complainants. The plaintiffs in that case were manufacturers of liquorice made from roots and juice imported from Anatolia and Spain, and they sent their goods to market
 
 stamped
 
 “Anatolia.” Soon afterwards the defendants made to order from a sample of the plaintiff’s liquorice, other liquorice which they also stamped “Anatolia.” It was a clear case of an attempt to imitate the mark previously existing, and to put upon the market the new manufacture as that of the first manufacturers. It does not appear, from the report of the case, that the juice or roots from which the defendants’ article was made came from Anatolia. If not their mark was false. Of course the Lord Chancellor enjoined them. In answer to the argument that the word Anatolia was in fact the geographical designation of a whole country, a word common to all, and that therefore there could be no property in it, he said, “ Property in the word for all purposes cannot exist; but property in that word as applied by way of stamp upon a stick of liquorice does exist the moment a stick of liquorice goes into the market so stamped and obtains acceptance and reputation in the market.” It was not merely the use of the word, but its application by way of stamp upon each stick of liquorice that was protected. Nothing in this ease determines that a right to use the name ofta region of country as a trade-mark for an article may be acquired, to the exclusion of others who produce or sell a similar article coming from the same region.
 

 
 *327
 
 Nor is such a doctrine to be found in
 
 Seixo
 
 v.
 
 Provezende,
 
 the remaining case cited by the complainants. The case turned upon an imitation of the plaintiff’s device, which was the figure of a coronet combined with the word Seixo, a word which can hardly be said to have been the name of a district of country. It means stony, and though applied to two estates, it was also the name of the plaintiff. Yet nothing in the decision warrants the inference that the word Seixo could aloue become a trade-mark for any article, much less that it could be protected as a trade-mark for any article to the exclusion of its use in describing other articles comjng from the same estate.
 

 It must then be considered as sound doctrine that no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district, from truthfully using the same designation. It is only when the adoption or imitation of what is claimed to be a trade-mark amounts to a false representation, express or implied, designed or incidental, that there is any title to relief against it. True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as. true in its application to his goods as it is to those of another who first applied it, and'who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers maybe mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth.
 

 These principles, founded alike on reason and authority, are decisive of the present case, and they relieve us from the consideration of much that was pressed upon us in the argument. The defendant has advertised for sale and he is selling coal not obtained from the plaintiffs, not mined or brought to market by them, but coal which he purchased
 
 *328
 
 from the Pennsylvania Coal Company, or from the Delaware, Lackawanna, and Western Railroad Company. He has advertised and soid it as Lackawanna coal. It is in fact coal from the Lackawanna region. It is of the same quality and of the same general appearance as that mined by the complainants. It is taken from the same veins or strata. It is truly described by the term Lackawanna coal, as is the coal of plaintiffs. The description does not point to its origin or ownership, nor indicate in the slightest degree the person, natural or artificial, who mined the coal or brought it tp market. All the coal taken from that region is known and has been known for years by the trade, and rated in public statistics as Lackawanna coal. True the Delaware, Lackawanna, and Western Railroad Company have sometimes called their coal Scranton coal, and sometimes Scranton coal from the Lackawanna, and the Pennsylvania Coal Company have called theirs Pittston coal, thus referring to the parts of the region in which they mine. But the generic name, the comprehensive name for it all is Lackawanna coal. In all the coal regions there are numerous collieries, owned and operated by different proprietors, yet the product is truly and rightfully described as Schuylkill, Lehigh, or Lackawanna coal, according to the region from which it comes. We are therefore of opinion that the defendant has invaded no right to which the plaintiffs cau maintain a claim. By advertising and selling coal brought from the Lackawanna Valley as Lackawanna coal, he has made no false representation, and we see no evidence that he has attempted to sell his coal as and for the coal of the plaintiffs. If the public are led into mistake, it is by the truth, not by any false pretence. If the complainants’ sales are diminished, it is because they are not the only producers of Lackawanna coal, and not because of any fraud of the defendant. The decree of the Circuit Court dismissing the bill must, therefore, be
 

 Affirmed.
 

 18 Howard’s Practice, 64.
 

 *
 

 Quoted
 
 supra,
 
 p. 315.
 

 *
 

 Amoskeag Manufacturing Co. v. Spear, 2 Sandford’s Supreme Court, 599; Boardman
 
 v.
 
 Meriden Britannia Company, 35 Connecticut, 402; Farina
 
 v.
 
 Silverlock, 39 English Law and Equity, 514.
 

 †
 

 2 Sandford’s Supreme Court, 599, quoted
 
 supra,
 
 in the note just preceding.
 

 *
 

 Vide Wolfe
 
 v.
 
 Goulard, 18 Howard’s Practice Reports, 64; Fetridge
 
 v.
 
 Wells, 4 Abbott’s Practice Reports, 144; Town
 
 v.
 
 Stetson, 5 Id. N. S. 218 Phalon
 
 v.
 
 Wright, 6 Phillips, 464; Singleton
 
 v.
 
 Bolton, 3 Douglas, 293 Perry
 
 v.
 
 Truefitt, 6 Beavan, 66; Canham
 
 v.
 
 Jones, 2 Vesey & Beames, 218; Millington
 
 v.
 
 Fox, 3 Milne & Craig, 338.
 

 *
 

 25 Barbour, 416.