RUMFORD CHEMICAL WORKS *v.* MUTH *et al.*

*(Circuit Court, D. Maryland. July 9, 1888.)*

1. TRADE-MARKS—WHAT WILL BE PROTECTED—"ACID PHOSPHATE."
   Upon a bill for injunction to restrain the use of a trade-mark claimed by complainant in the name, "Acid Phosphate," applied to a medicinal preparation, *held*, that the proofs showed that the name was not meaningless and arbitrary, but with reasonable exactness described the characteristics and qualities of the preparation for the purpose for which it was intended to be used, and that, being thus descriptive, it could not be exclusively appropriated by complainant as its trade-mark.[1]

2. SAME—INJUNCTION.
   It appearing that the defendants did not make use of any deceptive imitation of complainant's labels and packages, but properly distinguished their preparation from complainant's, and sold it as their own, the injunction was refused.

*(Syllabus by the Court.)*

In Equity. Bill for injunction to restrain the use of the trade-mark, "Acid Phosphate."

*Rowland Cox* and *Francis P. Stevens*, for complainant, cited—

*Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *Hier* v. *Abrahams*, 82 N. Y. 519; *Congress Spring Case*, 45 N. Y. 300; *Selchow* v. *Baker*, 93 N. Y. 59; *Manufacturing Co.* v. *Manufacturing Co.*, 32 Fed. Rep. 94; *Benedictine Case*, 36 Alb. Law J. 364; *Lockman* v. *Reilly*, 95 N. Y. 65; *Smith* v. *Sixbury*, 25 Hun, 232; *Roberts* v. *Sheldon*, 8 Biss. 398; *Electro-Silicon Co.* v. *Hazard*, 29 Hun, 369; *Conrad* v. *Brewing Co.*, 8 Mo. App. 277; *Lee* v. *Haley*, 21 Law T. (N. S.)

[1] See Cahn v. Gottschalk, 2 N. Y. Supp. 13; Burton v. Stratton, 12 Fed. Rep. 696, and note; Schneider v. Williams, (N. J.) 14 Atl. Rep. 812.

546; *Edleston* v. *Vick*, 18 Jur. 7; *Kidd* v. *Johnson*, 100 U. S. 617; *Electro-Silicon Co.* v. *Levy*, 59 How. Pr. 469; *Sawyer* v. *Horn*, 1 Fed. Rep. 24, and cases cited; *Avery* v. *Meikle*, 81 Ky. 81, and cases cited; *Moxie Nerve Food Case*, 32 Fed. Rep. 205; *Estes* v. *Leslie*, 27 Fed. Rep. 22.

*Daniel & Dallam, E. Otis Hinkley, George H. Lathrop,* and *Frederick H. Betts,* for defendant, cited—

*Canal Co.* v. *Clark*, 13 Wall. 323, 327; *Manufacturing Co.* v. *Manufacturing Co.*, 32 Fed. Rep. 98; *Battery Co.* v. *Electric Co.*, 23 Fed. Rep, 277; *Burton* v. *Stratton*, 12 Fed. Rep. 696; "Ferro-Phosphorated Elixir of Calisaya Bark," *Caswell* v. *Davis*, 58 N. Y. 223; "Paraffin Oil," *Young* v. *Macrae*, 9 Jur. (N. S.) 322; "Leibig's Extract of Meat," *Meat Co.* v. *Hanbury*, 17 Law T. (N. S.) 298; "Dessicated Codfish," *Town* v. *Stetson*, 3 Daly, 53; "Night Blooming Cereus," *Phalon* v. *Wright*, Amer. Trade-Mark Cas. 307, 308; *Medicine Co.* v. *Wood*, 108 U. S. 224, 225, 2 Sup. Ct. Rep. 436; *Fetridge* v. *Wells*, 13 How. Pr. 385; *Ginter* v. *Tobacco Co.*, 12 Fed. Rep; 782; *Manufacturing Co.* v. *Stanage*, 6 Fed. Rep. 279; *Manufacturing Co.* v. *Larsen*, 8 Biss. 151; *Machine Co.* v. *Frame*, 21 Blatchf. 431; *Battery Co.* v. *Electric Co.*, 23 Fed. Rep. 276.

MORRIS, J. It appears from the testimony that in chemistry the product obtained by partly neutralizing phosphoric acid with a base is called an acid phosphate of that base, as acid phosphate of lime, acid phosphate of potassium, acid phosphate of magnesium or sodium or zinc or strychnine. There are therefore very many acid phosphates, and the words "acid phosphate" alone suggests an indefinite and incomplete idea, unless, by the context or use or association, there is suggested to the mind the base which must be present as a constituent of every phosphate. The complainant corporation, doing business in Providence, R. I., about the year 1868, guided by the chemical knowledge and discoveries of Prof. Eben N. Horsford, and under his direction, began the manufacture for sale of a preparation to be used as a medicine, condiment, or beverage, which was essentially an acid phosphate of lime, and to which it gave the name of "Horsford's Acid Phosphate," and by that name labeled, advertised, and sold it in large and increasing quantities. This preparation went into very general use; and as it was the first preparation of the kind thus popularized, and for a long time the only one known to the public, it came to be usually called for, not as "Horsford's Acid Phosphate," but simply as "Acid Phosphate."

Parke, Davis & Co., manufacturing chemists of Detroit, Mich., began, in 1881, the manufacture and sale of a preparation of the same character, after a formula used by Dr. William Peppler, of Philadelphia, very similar to Horsford's, and which they called "Liquor Acidi Phosphorici," and which, by labels, circulars, and advertisements, they represented to be a scientific substitute for "Horsford's Acid Phosphate." In 1887, Parke, Davis & Co. changed the name and label of their preparation, and called and labeled it " Liquid Acid Phosphate," representing it to be the same as their "Liquor Acidi Phosphorici," and a substitute for Horsford's Acid Phosphate, stating that it contained phosphoric acid in combination with calcium, magnesium, iron, sodium, and potassium. In these circulars they say:

"We have hitherto labeled this preparation 'Liquor Acidi Phosphorici,' adopting the name and following the formula of Dr. Wm. Peppler, of Philadelphia. The preparation has, however, come to be so universally known as 'Acid Phosphate' that we have thought it best to adopt that name on our labels."

There is no question that the preparation had become so universally known by the name "Acid Phosphate" because it had been brought into public notice by the complainant's preparation, which was extensively used as an aid to digestion, and called for at soda-fountains as a tonic beverage by that name. The nominal defendants in this case are Messrs. Muth & Bro., of Baltimore, but it is the sale by them of the preparation made and advertised by Parke, Davis & Co., and labeled "Liquid Acid Phosphate," which is complained of, and it is they who are defending this suit. There is no complaint of any misleading representation with regard to the manufacture or origin of the goods sold by the defendant, and no ground for complaint of any deceptive imitation of complainant's labels or packages. Indeed, Parke, Davis & Co., in all respects except in the use of the name "Acid Phosphate," seek to give prominence to the fact that the article sold by defendants is made by them, and not by complainant, and that the formula is somewhat different, and, as they claim, an improvement upon Prof. Horsford's. There is therefore entirely wanting that element of deception by imitative labels and false representations which moves the court to grant restraining injunctions in many trade-mark cases.

The sole question for decision is whether or not the words "acid phosphate," as applied to complainant's preparation, are words of that class which the law will protect as a trade-mark. This narrow question of great importance to the complainant has been most thoroughly and ably presented by counsel, and it resolves itself into a question of fact; for as to the principles of law there is no contest. The right of the complainants to protection in the trade-mark claimed by them depends upon whether or not acid-phosphate is an arbitrary name given by them to a preparation to which it had never before been applied, and not a description of it; for, if it is a reasonably sufficient description of the character, kind, and quality of the thing to which it has been applied, then it is a well-settled rule of law that no one can make an exclusive appropriation of such a name. The phrase "acid phosphate" is common in chemistry, and constantly found in treatises and text-books. It was not invented by the complainants, but had been in use some 20 or 30 years before they made use of it. Any compound of any phosphoric acid with a base may appropriately be called a phosphate; and, if there is present so much acid that it could saturate a greater quantity of the base, it is properly called an "acid phosphate," to distinguish it from a "basic phosphate," in which the base preponderates, or a neutral phosphate, in which neither is in excess, all three of these terms being perfectly well known in chemistry. It is not to be gainsaid that as a complete and exhaustive indication of all that the preparation contains the phrase "acid phosphate" is inexact. It does not indicate that it is a solution, which it is,

while a proper acid phosphate is a solid until it is dissolved. . It does not indicate the character of the acid, and it does not indicate what base or bases have been used. But this criticism is true of most words or phrases in common use. "Fresh bread" is one of the commonest phrases, and yet it does not indicate with precision whether the bread is made of wheat or rye, of bolted or unbolted flour, whether or not it contains salt, or with what character of yeast it is made. In fact, it means a somewhat different thing in every community in which it is used, as travelers are apt to find out. The true test, it appears to me, must be not whether the words are exhaustively descriptive of the article designated, but whether in themselves, and as they are commonly used by those who understand their meaning, they are reasonably indicative and descriptive of the thing intended. If they are thus reasonably descriptive, and not arbitrary, they cannot be appropriated from general use, and become the exclusive property of any one. This rule is clearly explained and applied by Judge FOLGER, speaking for the court of appeals of New York in the case of *Caswell* v. *Davis*, 58 N. Y. 223. He says:

"Nor is the question whether the name used as a trade-mark will convey an exact notion of how to compound an article, so that one reading it will be able to make a like article. If the necessary effect is to inform the reader or hearer of the general characteristics and composition of the thing, it is a name which may be used with equal truth by any one who has made and offers for sale a thing compounded of the same ingredients, and who desires to express to the public the same facts. Nor does the coupling together, in a new combination of words which before that had been used apart, and had entered into the common scientific vocabulary, give a right to the exclusive use of such combination, where it is indicative, not of origin, maker, use, and ownership alone, but also of quality and other characteristics."

In the case then before the New York court of appeals, the plaintiffs, Caswell, Mack & Co., had prepared a medicine to which they had given the name of "Ferro-Phosphorated Elixir of Calisaya Bark." The plaintiffs were the first to invent and use the combined word "ferro-phosphorated," and gave it to the preparation to distinguish it as the preparation made by themselves, and also to announce that there was iron and phosphorus in it. This it was decided they could not do to the exclusion of other persons; for although the combined word was their own invention, and did, as their trade-mark, indicate the origin and maker of the article, it did more, and, by words which were of common significance, it indicated that the ingredients iron and phosphorus were combined with the calisaya bark, and therefore it could not be protected as a trade-mark. This case only applies the recognized ruling in many other cases.

It seems impossible to maintain that the words "acid phosphate" are not, in this sense, descriptive words, indicative of the composition and characteristics of Horsford's preparation. There is evidence in what has heretofore been done by the complainant and by Horsford himself which tends strongly to support this conclusion. The complainant's trademark, as originally registered in the United States patent-office in the year 1877, states that the complainant "has adopted for its use a trade-

mark for acid phosphate, (a chemical preparation used for various purposes.) The trade-mark consists essentially of the word-symbol 'Horsford,' which is used in conjunction with the name of the article to which it is applied, and in the form, namely, 'Horsford's Acid Phosphate,' as shown with the accompanying *fac simile.* * * * The particular goods to which this trade-mark is appropriated is acid phosphate." Subsequently, about eight years later, and after the beginning of the difficulty which has led to this litigation, the complainants registered, in 1885, their trade-mark as simply, "Acid Phosphate;" and they then described the article to which it was applied, in general terms, as a medicinal preparation for disorders of the digestive organs and nervous system, and a condiment and ingredient for a beverage. It seems to me that when, in the specification of the first registration, the complainant declared that its trade-mark was the word "Horsford," and then, in compliance with the act of congress requiring that they should state "the class of merchandise and the particular description of goods comprised in such class by which the trade-mark has been or is intended to be appropriated," it stated simply that the particular goods was acid phosphate, they conceded that acid phosphate was a descriptive name sufficiently describing, not a class of goods, but a particular description of goods. There is evidence also that Prof. Horsford considered the term "acid phosphate" descriptive of the essential characteristics of the preparation for the uses for which he designed it. There was granted to him, March 10, 1868, patent No. 75,272, for "improved manufacture of acid phosphates to be used in food." In his specification he says:

"My invention consists in the use of acid phosphate of lime, magnesia, or alkali as a condiment in liquid form, either by itself or as a substitute for vinegar, or an ingredient in a beverage or sauce, or for other culinary or sanitary purposes, where it is desirable to employ an acid in liquid form. The importance of phosphates to the animal economy, to be supplied through food, has long been recognized. I have found the advantage to the health of using the liquid monabasic acid phosphate, when employed in aid of digestion and assimilation, to be of the most marked character. * * * The acid phosphate I employ is generally a compound of one atom of lime with one atom of phosphoric acid, with a small addition of free phosphoric acid, and is prepared as follows."

He then describes the process of preparation, and adds:

"The acid phosphate of lime may be substantially replaced by the corresponding compounds of magnesia and potassa or soda, produced by the well-known chemical methods."

His claim is for "the manufacture of liquid acid phosphate of lime for use as a condiment or article of diet or ingredient to be employed in beverages or food, substantially as and for the purposes herein set forth."

It seems to me that it is fairly to be inferred from this specification of Prof. Horsford, and it is distinctly stated in other portions of the evidence, that the particular base used in obtaining the phosphate to be used in this preparation is not deemed of substantial importance. It would appear that it is the phosphoric acid, presented to the stomach in that form in which it is found in an acid phosphate which has been

dissolved, which is supposed to have the therapeutic effect attributed to the preparation. In describing this medicine, therefore, it was not essential to mention the base of the phosphate, for that is not important, but the substantially important description was given when it was stated to be a liquid acid phosphate. It seems to me, therefore, that in view of the statements contained in the original registration of the trade-mark and in patent No. 75,732, the complainant can hardly be heard to say that the words "acid phosphate" were then regarded as arbitrary and meaningless, and not as intentionally descriptive of what was considered to be the essential characteristics, of the preparation. While a court of equity should regard with disfavor, and seek to remedy, invasions of proper trade-marks, and to rebuke all unfair dealing by which the good-will earned by one trader is unlawfully pirated by another, care must be exercised that protection is not granted to the appropriation of descriptive names in such manner that a perpetual monopoly is created in the article described, in favor of those who have no exclusive right to manufacture it. *Canal Co.* v. *Clark*, 13 Wall. 311.

The counsel for defendants have also submitted an argument based upon the right, after a patent has expired, which any one has, to use the name which the inventor has given to a new patented article, and by which it has become generally known. Complainant, however, insists that the defense is not raised by the answer, and that there is no testimony to show that complainant's preparation was made under the patent No. 75,272, granted to Horsford. I have not found it necessary to consider or pass upon this question, resting my decision upon the inherent objection to the words themselves, which prevents their lawful appropriation as a trade-mark.

There being no deceptive similarity in defendants' labels and packages, and nothing complained of except the use of the words "acid phosphate," in my judgment, the bill must be dismissed.