O’NIELL, Chief Justice.
 

 The plaintiff, a commercial partnership, sued to enjoin the defendant from using the name
 
 Victory Home Beverage Service,
 
 as a trade name, in carrying on his business, in competition with the plaintiff, of selling beverages at retail and for home consumption and delivering the beverages in the homes of the customers. The trial judge, after hearing the case on its merits, gave judgment for the plaintiff, forever enjoining Baas, and his successor in business, the Victory Home Beverage Service, Inc., and their agents, servants, and employees, from conducting any business “in this locality,” in the name
 
 Victory Home Beverage Service,
 
 or
 
 Victory Home Beverage Service, Inc.,
 
 or in any other name embracing the the name
 
 Home Beverage Service
 
 or the word
 
 Home
 
 in combination with any other words, as designating the business of selling beer and soft drinks for consumption at retail in the City of New Orleans and its vicinity, in competition with the plaintiff.
 

 After the suit was tried and submitted to the judge for decision, but before it was decided, the defendant Baas organized a Corporation under the name
 
 Victory Home Beverage Service, Inc.,
 
 which took over his business. The plaintiff, therefore, filed a supplemental petition making the
 
 Victory Home Beverage Sei-vice, Inc.,
 
 a party to-the suit and praying for an injunction against the corporation, as well as against Baas. The judgment was rendered accordingly, against both Baas and the corporation. They are appealing from the decision.
 

 The plaintiff, partnership, is composed of two brothers, named Robichaux. In. February 1934, one of them, Louis E. Robichaux, Jr., acquired from the Jackson Brewing Company the business of selling at retail and for home consumption, and delivering to the homes of the customers,. Jax Beer and several kinds of soft drinks. Robichaux continued carrying on the business until July 1940, when his brother acquired an interest in the business; and the partnership, thus formed, continued in the' business under the trade name
 
 Home Beverage Service
 
 until' January 1, 1946, on which date the trade name was changed to-
 
 Home Beverage and Food Service.
 
 The-name
 
 Home Beverage Service
 
 was registered by Louis E. Robichaux, Jr., on December 13, 1939, under the provisions of' Act 303 of 1926, providing for the registering of trade names.
 

 It was in September 194S that the defendant, Bennie Baas, commenced doing business-in New Orleans under the trade name
 
 Victory Home Beverage Service
 
 — selling at retail and for home consumption, and delivering to the customers’ homes, beer and soft drinks.
 

 
 *878
 
 This suit was filed on December
 
 7,
 
 1945. In bis answer Baas defended on the ground, first, that the name
 
 Home Beverage Service,
 
 and each one of the three words composing the name, were merely descriptive of the business in which both the plaintiff and the -defendant were engaged, and that the words were therefore not the subject of -exclusive appropriation; and second, that if the combination of words,
 
 Home Beverage Service,
 
 should be deemed to have been used by the plaintiff long enough to have acquired a secondary meaning identifying the plaintiff’s established business, ,the defendant nevertheless had the right .also to use the name
 
 Home Beverage Service,
 
 as describing the business in which he was engaged, because he was not guilty of .any fraud or misrepresentation or unfair -competition in his use of the’ phrase
 
 Home Beverage Service
 
 as a part of his trade name
 
 Victory Home Beverage Service.
 

 ■
 
 On January 11, 1946, which was only 20 days after the defendant had answered the suit, he filed a supplemental answer in which he set up the additional defense that the plaintiff had changed its trade name to
 
 Home Beverage and Food, Service,
 
 after filing the suit, and thereby had abandoned the original trade name
 
 Home Beverage Service.
 

 On the trial of the case is developed that the plaintiff did change its trade name,
 
 Home Beverage Service,
 
 to the name
 
 Home Beverage and Food Service,
 
 of date January 1, 1946, only 10 days after the defendant had filed his answer to the suit and 10 days before he filed his supplemental answer. It developed also on the trial of ,the case that at sometime more than two months before the suit was filed the plaintiff purchased and added to its business an established coffee business and at the same time decided to add the business of selling and distributing certain frozen food products, and therefore decided at that time to change its trade name from
 
 Home Beverage Service
 
 to the name
 
 Home Beverage and Food Service.
 
 Accordingly, under an order given by the plaintiff to the telephone company on October 22, 1945, which was a month and a half before this suit was filed, the listing of the plaintiff’s trade name in both the alphabetical and the classified section in the telephone directory' was changed so as to conform with the newly adopted trade name, street address and telephone number, thus: The name
 
 Home Beverage Service
 
 and the address 712 Frenchmen Street and the telephone number F. Ranklin 4109, were changed to the name
 
 Home Beverage and Food Service,
 
 the address 531 Frenchmen Street and the telephone number CRescent 5554. It was admitted also on the trial of this case that, on January 4, 1946, less than a month after the suit was filed, an inspector for the Revenue Division of the City of New Orleans, which division handles the collection of the sales tax, was instructed by one of ‘the partners of the plaintiff firm to change the registration of ■ the trade name,
 
 Home Beverage Service
 
 to the trade name
 
 Home Beverage and Food
 
 
 *880
 

 Service;
 
 and that, on that day, the change was made in the City Revenue Division, effective January I, 1946. As of that date, the plaintiff firm changed also the name of its bank account in the two banks in which it kept an account, from the name
 
 Home Beverage Service
 
 to the name
 
 Home Beverage and Food Service.
 
 And, about the same time, the plaintiff changed its display signs, which were painted on its building, to the new trade name
 
 Home Beverage and Food Service.
 

 There is no explanation in the record as to why the plaintiff in its petition in this suit did not mention its having changed its trade name from
 
 Home Beverage Service
 
 to
 
 Home Beverage and Food Service.
 
 But, on the trial of the case, after the fact of the change was proven, the attorney for the plaintiff asked for and obtained from the court permission to change the name of the plaintiff to
 
 Home Beverage and Food Service
 
 as being the partnership name since January 1, 1946.
 

 In the'brief for the plaintiff it is conceded that the words
 
 Beverage
 
 and
 
 Service
 
 are only descriptive of the class of business in which both the plaintiff and the defendant are engaged, and hence that the plaintiff has not the exclusive right to use these words in its trade name; but it is contended in the brief that the word
 
 Home
 
 is the “catchword” in the trade name originally adopted by the plaintiff, and hence that the defendant has no right to use the word
 
 Home
 
 in its trade name in the business in which it competes with the plaintiff. The plaintiff cites in support of that contention, the case of New Home Sewing Machine Co. v. Bloomingdale, C.C.N.Y., 59 F. 284, and Griggs, Cooper & Co. v. Erie Preserving Co., C.C.N.Y., 131 F. 359. Each one of those decisions was rendered by a judge of a United States District Court. In the first of these cases it was held that the New Home Sewing Machine Company had the exclusive right to use the word
 
 Home
 
 in the trade-mark, which was stamped upon its sewing machines, and by which it identified the make of the sewing machine which the company had been manufacturing and selling for a period of 25 years. In the second case cited it was held that the name
 
 Home Comfort,
 
 under which, as a trade-mark, the defendant made and sold certain canned goods, was an infringement upon the complainant’s trade-mark,
 
 Home Brands.
 
 The word
 
 Home,
 
 dealt with in these decisions, was part of a trade-mark, identifying a certain type of merchandise or article of commerce, and was not a part of a trade name, descriptive of a particular type of business. The cases are not appropriate to' the instant case so far as the word
 
 Home
 
 forms part of the trade
 
 name in
 
 contest.
 

 Our opinion is that the most appropriate of
 
 the
 
 decisions which have
 
 been
 
 cited are Dryice Corporation of America v. Louisiana Dry Ice Corporation, decided in 1932 by the United States Circuit Court of Appeals for the Fifth Circuit, 54 F.2d 882, and the case of Drive It Yourself Co. v. North, decided in 1925 by the Maryland Court, of
 
 *882
 
 Appeals, 148 Md. 609, 130 A. 57, 43 A.L.R. 206.
 

 In the Dryice Case it was held that the words
 
 Dry Ice
 
 were not susceptible of registry as a trade-mark for solid carbon ■dioxide, and hence that the users of the term
 
 Dry Ice
 
 in connection with solid carbon dioxide could not prevent others from using the words in their corporate names, or in dispensing .solid carbon dioxide produced or marketed by them, provided ■of course that the use of the words was not accompanied by any false representation as to the origin of the product. In the course of the opinion written by Judge Walker for the court it was said [54 F.2d 885]:
 

 “The term ‘Dry-Ice/ being descriptive ■of qualities or characteristics of solid carbon dioxide, the product with reference to which it was used, the plaintiffs had no right to prevent the defendants or any of them Lfrom using that term in corporate names or in designating solid carbon dioxide produced or to be produced and marketed by them, if the latters’ so doing was unaccompanied by any wrongful conduct having thé effect of falsely representing the origin or source of their product or attempting to palm it off on the purchasing public as the product of the plaintiffs. Canal Co. v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581; Warner & Co. v. Lilly & Co., supra. [265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161], ‘It is only when the adoption or imitation of what is claimed to be a trade-mark amounts to a false representation, express or implied, designed or incidental, that there is any title to relief against it. True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth.’ Canal Company v. Clark, supra. Defendants did not become chargeable with fraud or misrepresentation by merely using the term ‘Dry Ice’ in corporate names or in' referring to solid carbon dioxide they were planning to produce, though at that time that term had acquired what is called a secondary meaning by reason of it becoming associated in the minds of members of the public with the product of a particular manufacturer. Where no exclusive right to the use of a word or term exists, a charge of fraud or misrepresentation (unfair competition) in the use of it by another cannot be sustained unless it is supported by proof. Elgin Watch Co. v. Illinois Watch Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365; Barton v. Rex Oil Co., [3 Cir.,] 2,F.2d 402, 40 A.L.R. 424.”
 

 
 *884
 
 In the Dryice Corporation’s case a writ of certiorari was denied by the Supreme Court of the United States. 286 U.S. 558, 52 S.Ct. 640, 76 L.Ed. 1291.
 

 In the case of Drive It Yourself Co. v. North [148 Md. 609, 130 A. 60], the court cited Rumford Chemical Works v. Muth, C.C.Md., 35 F. 524, 1 L.R.A. 44, as furnishing the best statement of the general rule for determining whether a particular name or phrase is merely descriptive of a type of business, and then stated:
 

 “Measured by this rule, we have no hesitancy in holding that the phrase ‘drive it yourself’ is descriptive of the business in which the appellant is engaged. The words are ordinary English words in everyday use. The combination in which they are used, when applied to the hiring of automobiles, accurately designates and describes the character and nature of the business to which they refer, and the exhibits filed in the case show that the phrase is used and understood throughout the country as indicating that particular business. * * *
 

 “Nor do we think that the use in some places of the phrase ‘U drive it’ to designate the same business destroys or affects the descriptive character of the phrase we are considering.”
 

 In contrast with the Drive It Yourself Case is the case of Saunders System Atlanta Co. v. Drive It Yourself Co., 158 Ga. 1, 123 S.E. 132, in which the Supreme Court of Georgia, in 1924, protected the Drive It Yourself Company against the use of the phrase “Drive it yourself”, as used by the Saunders System. But in that case-the court found from the evidence, as a. fact, that the defendant, the rival company,, although it had a different corporate name,, was guilty of unfair competition, by misleading the public by holding itself out as. the same Drive It Yourself Company which was the complainant in the suit.
 

 The plaintiff in the instant case contends that by its long use of its trade name the name has acquired what is referred to by the law writers.as a secondary meaning, by which secondary meaning the name identifies exclusively the particular business conducted by the plaintiff. It is-conceded that where a complainant depends-upon the so-called
 
 secondary meaning
 
 of a trade name or trade-mark claimed by him he must prove fraud or unfair competition on the part of his rival in order to prevent the latter’s use of the trade name or trademark in contest. This part of the law on. the subject of trade names, trade-marks, and unfair competition, is stated in Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 403, 40 A.L.R. 424, cited in the defendant’s brief in this case and quoted also in the plaintiff’s brief — thus:
 

 “But a descriptive name, though not originally capable of exclusive appropriation, may, by use and association with a commodity, obtain a secondary signification denoting that goods bearing it come from one source, and thus a superior right to its use may be acquired by the person who first
 
 *886
 
 adopted it. Inasmuch as no absolute ownership in or exclusive right to use such name as a trade-mark is vested in anyone, the rights obtained by the first user are not infringed by the mere use of such mark by a competitor, even though such use be in association with competing goods. If this were the whole law of the subject the matter would be easy. But just here arises another body of law, that of unfair competition. The law governing trademarks is but a branch of the law regulating trade competition. The policy of this law is to foster, not to hamper, competition, and it permits a monopoly in the use of a trade-mark only when it has become the absolute and exclusive property of the first user — good against the world. A merely descriptive name can never become such property, Warner & Co. v. Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; and the utmost the first user of such a name after it has acquired a secondary meaning can insist upon is that no one -shall use it against him in an unfair way. Accordingly, the second user becomes an infringer only when he makes an unfair use of the mark. Not any competition, but only unfair competition on the part of'such user is actionable. Canal Co. v. Clark, 13 Wall. 311, 80 U.S. 311, 324, 20 L.Ed. 581; Columbia Mills v. Alcorn, 150 U.S. [460,] 464, 14 S.Ct. 151, 37 L.Ed. 1144; Elgin Watch Co. v. Illinois Watch Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365.”
 

 It is contended that the defendant in this case was guilty of unfair competition by suppressing or obscuring in some measure the name
 
 Victory,
 
 and by magnifying or emphasizing the words
 
 Home Beverage Service,
 
 in several places in which the name is displayed. For example, it is contended that on the signboard extending from the building in which the defendant conducts its business the name
 
 Victory
 
 appears on a separate line above the words
 
 Home Beverage Service
 
 and that by this means public notice is attracted only to the name
 
 Home Beverage Service,
 
 and not to the name
 
 Victory. A
 
 photograph in the record shows that there is no deception or attempted deception in that respect. The signboard, bearing another sign, was attached to the building, having been used by a previous occupant, at the time when the defendant moved in. The signboard was wider than necessary and was too short to accommodate the name
 
 Victory Home Beverage Service
 
 on one line. Therefore, under the direction of one of the members of defendant firm, the sign painter painted the line
 
 Home Beverage Service
 
 so that the upper edge of the row of letters was concave; and above that line he painted the name
 
 Victory.
 
 The lettering in the name
 
 Victory
 
 appears to us to be as large as the lettering'in and near the center of the line
 
 Home Beverage Service.
 
 And the name
 
 Victory
 
 stands out as bold as the descriptive words
 
 Home Beverage Service.
 
 Besides, close by the signboard, and on the same side of the building, immediately above the main entrance, is painted the name
 
 Victory Home Beverage Service,
 
 all
 
 *888
 
 on one line. It does not seem at all likely that the signboard complained of could mislead a passerby into the belief that' the name of the proprietor of the establishment, was not the
 
 Victory Home Beverage Service
 
 but merely the
 
 Home Beverage Service.
 

 In this connection the plaintiff complains also of a label which the defendant designed and which is pasted upon every case of beverages sold and delivered by the defendant. The complaint or contention is that the name Victory, in two places on the label, is set out apart from the words
 
 Home Beverage Service
 
 in such a way as to fail to identify the proprietor of the merchandise as the
 
 Victory Home Beverage Service.
 
 A photostat of the label was introduced in evidence by the defendant. The word
 
 Victory
 
 stands out more conspicuous than the words
 
 Home Beverage Service.
 
 The label consists mainly of an illustration of. one of the defendant’s trucks, with the driver delivering a case of beverages to a woman in front of a home, and the picture is embellished with an attractive landscape garden. There is certainly nothing in the picture to justify the complaint that the label does not identify the particular business of which the defendant alone is the proprietor.
 

 The defendant introduced in evidence three photographs illustrating the signs painted on each side and on the rear of the two trucks with which the defendant delivers beverages. The pictures show that in every instance the name is printed with the words
 
 Victory Home Beverage
 
 on onej line and the word
 
 Service
 
 below the line. There is no suppression or separation of the name
 
 Victory.
 
 Besides, in each instance the street address is given, and the telephone number is printed there in figures-which are even larger than the letters in the name
 
 Victory Home Beverage Service.
 

 The record shows that 95'% of the orders-received by the defendant for beverages to be delivered are received by telephone. And the evidence shows that when the telephone calls are received the operator in the defendant’s establishment immediately announces : “Victory Home Beverage Service.”
 

 On the defendant’s letterheads and envelopes the name
 
 Victory Home Beverage Service
 
 is printed on one line with a uniform size and form of type.
 

 Aside from the facts which we have-stated, concerning the fairness with which the defendant has used the trade name,
 
 Victory Home Beverage
 
 Service, other facts establish a strong presumption that there was no likelihood of confusion of the plaintiff’s trade name with that of the defendant. The defendant’s establishment is listed in the telephone directory, in both the alphabetical and classified section of the book, only under the letter “V,” and not under the letter “H” — under which letter alone the plaintiff’s establishment is listed. And the telephone number which of course is different from that of the plaintiff is also, on a different exchange. The defendant’s.
 
 *890
 
 place of business, being on Tchoupitoulas Street between Girod and Lafayette, in the sixth square above Canal Street, and the plaintiff’s place of business being on Frenchmen Street between Chartres and Decatur, in the sixteenth square below Canal Street, the establishments are nearly a mile and a half apart, and in a city having a population exceeding 562,000.
 

 Our conclusion is that the trade name originally adopted by the plaintiff,
 
 Home Beverage Service,
 
 is only descriptive of the kind of business in which both the plaintiff and the defendant are engaged, and therefore was not subject to exclusive appropriation by the plaintiff. Conceding however that by the plaintiff’s use of the combination of words as a trade name for the period of 11 years and 7 months before the defendant entered into the same kind of business the plaintiff’s trade name had acquired then a secondary meaning, identifying the particular business of which the plaintiff was the proprietor, our finding is that the defendant was not guilty of unfair competition, specifically, of any representation that the business establishment conducted by him was the establishment owned and conducted by the plaintiff. The result of this finding is that the plaintiff has no right to prevent the defendant from using the trade name
 
 Victory Home Beverage Service.
 

 ■
 
 The plaintiff by.changing its trade name from
 
 Home Beverage Service
 
 to
 
 Home Beverage and Food Service
 
 recognized— though perhaps subconsciously — that the name
 
 Home Beverage Service
 
 .was descriptive of the business of selling beverages at retail and delivering them to the homes of the customers, but was not descriptive of such dealing in food products, as well as in beverages. It was for the purpose of making the trade name descriptive of the business of dealing not only in beverages but also in food products that the plaintiff changed the name from
 
 Home Beverage Service
 
 to
 
 Home Beverage and Food Service,
 
 when the plaintiff decided to add to its business of dealing in beverages the business of dealing also in food products. We might rest our decision upon the defendant’s alternative defense that the plaintiff, by changing its trade name to
 
 Home Beverage and Food Service,
 
 abandoned the trade name
 
 Home Beverage Service.
 
 But we have some doubt about that because one of the members of the plaintiff firm testified that for certain book-keeping purposes, and particularly for the purpose of being informed of the extent of the business' done in each department — the 'beverage department, the coffee department, and the frozen food department — the plaintiff would retain for its own information, as the name of one of these departments, the term
 
 Flome Beverage Service.
 
 At any rate, we deem it sufficient to rest our decision upon the conclusion that the trade name originally adopted-by the plaintiff,
 
 Home Beverage Service,
 
 is only descriptive of the kind of' business in which the plaintiff then was engaged, and that, conceding for the sake of
 
 *892
 
 argument that that term acquired to some extent a secondary meaning identifying the particular business of which the plaintiff was proprietor, the defendant has not been guilty of any unfair competition, such as representing his business establishment as being the same establishment of which the plaintiff was and is the proprietor.
 

 The judgment appealed from is reversed and the plaintiff’s demand is rejected and its suit dismissed at its cost.
 

 PONDER, J., absent.