## In re TOLEDO PORCELAIN ENAMEL PRODUCTS CO.
### Patent Appeal No. 2967.

Court of Customs and Patent Appeals.
May 23, 1932.

C. O. Marshall, of Toledo, Ohio, for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appellant herein made application in the United States Patent Office for the registration of its alleged trade-mark, which application was refused by the Examiner of trade-marks. The Commissioner of Patents, upon appeal to him, affirmed the decision of the Examiner, and appeal from the decision of the Commissioner is taken to this court.

The trade-mark of applicant consists in the fanciful or coined word "Toledot" with three dots at each end of the word; the dots being so placed as to form triangles. The mark is used by applicant upon porcelain enamel finishing.

The grounds of rejection by the Commissioner are that applicant does not sell the goods to which the mark is applied, but merely sells the finish.

Concerning the nature of the applicant's business, the Commissioner said:

"The applicant does not claim to sell the goods, porcelain finish, separately but states that it applies the finish to various articles, some of which it manufactures, some it purchases outright, and still others it merely enamels with its finish for the owners of the articles. The various articles may be parts of stoves, scales, refrigerators, kitchen utensils, plumbing fixtures, etc. The applicant applies the enamel finish to the surfaces of these articles, usually of iron or steel, dries the enamel in superheated air, fuses it under the control of temperatures, and then cools the products. In some cases subsequent layers of the enamel are applied in this same manner and these are dried and fused at successively lower temperatures. Some of the articles thus enameled are sold by the applicant company while others are returned to the manufacturers or owners for whom the enameling was done to be sold or otherwise disposed of by such owners."

An affidavit accompanies the application, in which affidavit is found the following; certain immaterial portions being deleted:

"That some of the applicant's products consist of parts the castings for which are supplied in raw state to the applicant by manufacturers of stoves, scales, refrigerators, kitchen utensils, plumbing fixtures, etc.; that the applicant, by processing such raw castings and by fusing upon them the porcelain enamel which it produces from purchased raw materials, produces finished parts which are then delivered to the customers who originally supplied the raw castings used in this portion of the applicant's product;

"That another portion of the applicant's product consists of enameled steel parts for refrigerators, stoves and the like which the applicant furnishes to various manufacturers to be incorporated in their devices; that in the manufacture of such parts, proper shapes are cut and formed by the applicant on its own machines in its own factory from steel which the applicant has purchased in sheets and such shapes are in some cases electrically welded by the applicant, using its own electric welding apparatus; that the parts are then processed by pickling, etc., the applicant's frit is sprayed upon them, dried and fused, and they are delivered to the manufacturers for whom they were made;

"That another portion of the applicant's product consists of unitary devices such as porcelain enameled signs, which are made on contract for customers; that such signs are manufactured by cutting suitable shapes from steel sheets purchased by the applicant or taken from its own stock, the cutting being done by the applicant in its own plant; that such shapes are then processed by pickling, properly prepared frit is sprayed upon them, the lettering and/or designs which they are to bear is stenciled or otherwise applied to them; that they are dried in superheated compartments and the coating material is fused upon the steel in electrically heated furnaces, after which they are packed for shipment to the customers under contract with whom they were made;

"That another portion of applicant's product consists of specialties such as bird baths, stands and the like, which the appli-.

cant manufactures for sale to department stores and other distributors; that these specialties are made of cast iron; that the applicant has no foundry and the castings are made for it by others; that in some instances the castings used in making such specialties have been made for it by founders who have also furnished castings which the applicant employs in making porcelain enameled parts for stoves, scales and the like;

"That the applicant's trade-mark has been used upon applicant's products of all the kinds described above in interstate commerce and that in the use of the trade-mark no distinction is made among goods manufactured by the applicant for sale, goods manufactured by the applicant on contract from materials purchased wholly in the open market, and goods manufactured by the applicant on contract when castings or other parts of the materials used are furnished by the customer for whom the goods are manufactured."

It will be noted from the above-quoted portion of the affidavit, and from the application filed in the Patent Office, that some of the merchandise to which applicant applies its trade-mark is owned by others. In this instance, if the appellant sells anything, it sells its finish only. Appellant does not sell the raw materials for enamel finishing. In some instances it appears that it manufactures the metal upon which the material is placed and sells the article, which is a complete article of commerce and is not part of any other article made by any other concern. For instance, the origin of the signs, to which reference is made in applicant's affidavit, if completely made and sold by the applicant, might be properly indicated by the proposed trade-mark. But the use to which appellant puts its trade-mark covers some articles which it neither owns nor sells. To that extent, it has not made and is not making a trade-mark use of the mark.

The function of a trade-mark is to indicate origin or ownership. The context of the registration statute would so indicate, and the Supreme Court of the United States has consistently so held for more than half a century. In Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581, is found the following: "The office of a trade-mark is to point out distinctively the origin, or ownership of the article to which it is affixed. * * *"

The Commissioner relied in part upon the decision of the Commissioner in Ex parte Toledo Scale Co., 388 O. G. 3, 1929 C. D. 57,

which is substantially to the same effect as his holding in the case at bar.

The Solicitor for the Patent Office cites the case of Schneider v. Williams, 44 N. J. Eq. 391, 14 A. 812, 815, 1888 C. D. 606, and quotes the following therefrom: "[Plaintiffs] applied their mark or label to a vendible commodity of which they are the owners, or in which they trade, and that they have put such commodity, marked with their mark, on the market."

That case holds that cigar makers have no such property right in the cigars made by them as would support the use of a trade-mark by them.

If a stove manufacturer or a scale manufacturer furnishes parts to the applicant, upon which the applicant is to place its porcelain finish, the finished article is not owned nor sold by the applicant. It performs a service and furnishes material used in the performance of such service for which service and material it is paid. The trade-mark of appellant, if placed upon a stove door, furnished and owned by another, would indicate that at one time it owned and sold the stove, or, at least, it might suggest that it owned and sold the door. This practice would mislead the public, and we conclude that such a use of a mark is not a proper trade-mark use and that application for the registration of a trade-mark so used should be denied.

If appellant is entitled to the registration of its mark for some of the uses above referred to, it would be difficult to draw a line as to the rights of the numerous artisans who frequently contribute to the manufacture of a given article. For instance, all parts of a table, including various phases of the workmanship thereof, might be labeled with the trade-marks of the various artisans to the utter confusion of the public. The trademark of the real owner and seller of the table, under these circumstances, would be of little, if any, value in indicating its origin.

Before this court, it was pointed out that the appellant uses its trade-mark in connection with the word "porcelain." Appellant argues that in this way the trade would understand that it only claimed that it was concerned with the porcelain portion of the article. The registration sought is not for "porcelain enamel" or for "Toledot porcelain," but for the word "Toledot" as described. By this statement we do not mean to indicate that the words "Toledot porcelain," or "porcelain enamel" are or are not registrable. It is not our purpose in this decision to hold

that well-known articles which form part of other articles may not be appropriately trade-marked by the owner and seller thereof. For the reasons above assigned, we do hold, on this record, that the appellant is not entitled to the registration of its trade-mark as applied for.

The following citations are deemed pertinent: United States v. Fur Dressers' & Fur Dyers' Ass'n, Inc., et al. (D. C.) 5 F. (2d) 869; Schieren Co. v. Whittemore Bros. Corp., 47 App. D. C. 247; In re Gregg & Son, Inc., 58 App. D. C. 70, 24 F.(2d) 898.

The decision of the Commissioner of Patents is affirmed.