**KING GUN SIGHT COMPANY, Inc.,
a corporation, Appellant,**

v.

**MICRO SIGHT COMPANY, Inc., a corporation, John V. McKenna, Rene Goudy,
Eugene F. Padel, George K. Thannisch,
and Marion Galloway, Appellees.**

No. 13470.

United States Court of Appeals,
Ninth Circuit.

Jan. 13, 1955.

Rehearing Denied March 1, 1955.

Townsend & Townsend, Charles Townsend, Jr., San Francisco, Cal., for appellant.

White & Riaboff, George B. White, Alexander Riaboff, Dudley Harkelroad, San Francisco, Cal., for appellees.

Before HEALY and ORR, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

King Gun Sight Company, Inc. (hereinafter "King"), on behalf of itself and its predecessors, sought damages and injunctive relief against Micro Sight Company, Inc. (hereinafter "Micro") and five persons who were or had been connected with Micro, alleging four causes of action: patent infringement; trademark infringement; unlawful palming off of firearm hammers under the trademark; and unfair competition, by virtue of Micro's and the individual defendants' acts in establishing and maintaining a competing business while still in King's employ, and thereafter con-

tinuing to solicit and sell to King's customers, using confidential trade information learned by them during such employment.

On the basis of findings of fact and conclusions of law, the trial court adjudged that King have judgment against Micro (the corporation) for the sum of $250 as nominal damages and injunctive relief under the third cause of action, that the patent was invalid and void as anticipated, that the trade-mark was invalid and void, that King take nothing under the fourth cause of action, and that each party bear its own costs.

Satisfaction of judgment was entered under the third cause of action. King appeals from the judgment as to the first, second and fourth causes of action and the order that each party bear its own costs.

Dean W. King, a predecessor of the King corporation, was the holder of Patent No. 2,159,527, for asymmetrical hammers for firearms, particularly pistol and revolver hammers. The King hammer consisted of a lug or spur welded on laterally to one or both sides of the thumb piece of the hammer, projecting outwardly as an integral extension of the checkered or knurled thumb piece, intended to facilitate the cocking action without the necessity for slipping the thumb over the hammer surface or "rolling" of the firearm, thereby enabling the marksman to maintain his sight on the target. On January 11, 1938, Dean W. King registered the name "Cockeyed" as the trade-mark denoting his pistol hammers, the certificate of registration being No. 353691.

The trial court found that the patent was invalid on the ground that it was anticipated by an earlier firearm hammer, the Diefendorf-O'Toole hammer, as well as by six prior patents, three of which were American, one British, one German, and one French. King stipulated that the Diefendorf-O'Toole hammer, if proved as to its reduction to practice and date of use, constituted a prior invalidating anticipation of the patent in question. King, however, attacks the finding of invalidity on the ground that Diefendorf's and O'Toole's testimony of events in 1935 is unconvincing and that even if their oral testimony is believed, it still does not furnish the requisite quantum of proof to invalidate the patent. Diefendorf and O'Toole, disinterested witnesses, testified that in 1935 O'Toole constructed for Diefendorf a revolver hammer similar to the King asymmetrical hammer, which revolver was received in evidence.

O'Toole fixed the year 1935 with reference to a rare duck stamp issued in 1934, to which his attention was called at a dove hunt the following year because the stamp had expired, and it was suggested to him that he keep it as a souvenir because of its rarity. Diefendorf's vivid recollection of the year was established by unusual circumstances which occurred in December 1934, in that, as a result of an automobile accident, his wife was injured and his mother-in-law died. A death certificate verifying the date of his mother-in-law's demise was received in evidence. He also fixed the date because he missed the dove hunting season of 1934, due to his own hospitalization, and in the following year he went dove hunting with O'Toole and one Burke. That was the only year in which the three hunted together, and Burke was the person from whom Diefendorf purchased the revolver on which O'Toole had welded the offset hammer.[1]

King urges that this testimony is so incredible that it is not worthy of belief. The testimony, however, stood uncontradicted, and was believed by an experienced trial judge. Furthermore, the same testimony had been introduced at a prior trial which occurred some months before

1. The plausible question as to why such an occasion should be remembered concerning a revolver when the hunters were seeking doves is answered in the record by the simple statement that during the heat of the day, when doves were not in sight, the hunters whiled away their time using revolvers in target practice.

the latter trial, and the record does not indicate that in this period of time King, by investigation or otherwise, could find witnesses to contradict the testimony given by Diefendorf and O'Toole.

■ Oral testimony, if of sufficient reliability and cogency, is as effective as written or other demonstrative evidence to establish the invalidity of patents due to prior art. "It is not the rule * * that oral evidence is insufficient as a matter of law in all cases; nor does the rule require the trial court to discard credible testimony merely because it is oral and because it deals with events and circumstances long past." Whiteman v. Mathews, 9 Cir., 216 F.2d 712, 716.

■ The trial court's finding of invalidity as anticipated by the Diefendorf-O'Toole firearm hammer on the basis of the oral testimony and the exhibits was not erroneous. Also, the finding that the prior patents show a lug or spur extended to one or both sides of the thumb piece of the hammer which may be engaged by the thumb substantially in the same manner as claimed in the King patent was correct. Visual examination of the drawings contained in the prior patents, together with the claims as described, show beyond question that the King asymmetrical hammer, covered by No. 2,159,527, was invalid and void as anticipated by those prior patents.[2]

The trade-mark "Cockeyed" for asymmetrical pistol hammers was adjudged invalid as a technical trade-mark. Micro claimed that the trade-mark was not registerable under the Trade-mark Act of 1905, 33 Stat. 724, 15 U.S.C. § 81, now 15 U.S.C.A. §§ 1051, 1054, 1126(b), because it was not used by King to indicate the origin or ownership of the article to which it was attached. The record shows that King's asymmetrical hammers were not made up in stock for sale, but in each instance the hammer of the customer's firearm was altered by welding a lug onto it, and the same hammer was returned to the customer. At no time did King ever claim ownership in any of the hammers. The general character of the firearm was in no way changed except for the addition of the offset lug as ordered by the customer.

■ "The function of a trade-mark is to indicate origin or ownership. The context of the registration statute would so indicate, and the Supreme Court of the United States has consistently so held for more than half a century. In Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 322, 20 L.Ed. 581, is found the following: 'The office of a trade-mark is to point out distinctively the origin, or ownership of the article to which it is affixed. * * *'" In re Toledo Porcelain Enamel Products Co., 58 F.2d 423, 425, 19 C.C.P.A., Patents, 1167.
See also In re Gregg & Son, Inc., 58 App. D.C. 70, 24 F.2d 898.

■ We agree that the finding of the trial court as to the second cause of action was correct.

Micro in several instances received orders for "Cockeyed" hammers and upon completion of the alteration redelivered them to the customers without expressly advising them in advance that it was not entitled to use the trade-mark "Cockeyed." The court held that the trade-mark had acquired a "secondary meaning," identifying King's offset hammers. In view of the length of time the word "Cockeyed" had been in exclusive use by King, and the publicity given it, we think the trial court's finding of "secondary meaning" in this case is amply supported by the record. However, whether or not "Cockeyed" is a valid trade-mark or had acquired a "secondary meaning," King has not substantiated its claim of infringement except for the finding that Micro palmed off offset hammers produced by it. King has not point-

2. D. B. Howard, No. 1,786,614, Dec. 31, 1930; E. I. Herrick, No. 426,015, Apr. 22, 1890; British Patent to Leon Serne, No. 6254, Jan. 22, 1914; German Patent to Gustav Fuekert, No. 76253, Aug. 15, 1893; French Patent to Emile Dumas, No. 436,866, Apr. 6, 1912.

ed to anything in the record showing that Micro used, adopted or confused the trade-mark.

As to the fourth cause of action, the trial court found there was insufficient evidence to sustain a finding that King's former customers were induced to do business with Micro through the latter's use of secret information obtained by the individual defendants during their employment by King, and that King was not entitled to relief. A careful examination of the entire record leads us to the conclusion that the trial court's finding in this regard was not unreasonable. The burden was upon the plaintiff to establish proof of unfair competition. Although there is some conflict in the record on this score, we cannot say that the trial court erred in its finding.

On this appeal, Micro has raised questions concerning title to the alleged causes of action and jurisdiction of the court as to the fourth cause of action. In view of our conclusions as stated above, we deem it unnecessary to discuss them. Nor do we find any reason for altering the order that each party bear its own costs below.

Affirmed.